541 P.2d 612

Rosemary K. BRADFORD, Plaintiff-Respondents.

v.

Owen SIMPSON, Defendant-Appellant.

No. 11857.

Supreme Court of Idaho.

Dec. 15, 1975.

DONALDSON, Justice.

Plaintiff-Respondent Rosemary K. Bradford filed this action November 1, 1972. In her complaint she alleged that defendant-appellant Owen Simpson trespassed upon certain property belonging to her and interfered with her access to the shoreline of the Big Wood River adjacent to her property. Following trial, the district court entered Findings of Fact and Conclusions of Law together with judgment on December 10, 1974, awarding plaintiff $21,000.00 in compensatory damages, $25,462.89 in punitive damages, and attorney's fees and enjoining defendant from any interference with plaintiff's property rights. Defendant moved the district court for a new trial, to amend the judgment, for relief from judgment, to amend Findings of Fact and Conclusions of Law and to strike certain affidavits. Defendant appeals from the judgment and from the amended order denying his motions.

The subject property had been owned by defendant for many years and was platted in 1964 as the "Sun Valley Subdivision of the City of Ketchum" and later revised as the "Sun Valley Subdivision, First Addition, Revised." In 1964 Lots 16, 17, and 18 were sold separately to three individuals. On September 19, 1969, plaintiff purchased all three lots for $7,000 each. Plaintiff's lots were deeded to her by warranty deeds which described them by lot and block number of the subdivision.

The east side of all three lots abutted on the west bank of the Big Wood River, with Lot 18 the northernmost or upstream lot. Opposite Lot 18 the Big Wood River divided into two channels, flowed around a long island and rejoined considerably downstream from Lot 16. The western branch of the river was the smaller but flowed year round.

The trial court found that commencing in November of 1968, the defendant, using a caterpillar tractor and bulldozer began filling the west channel of the river. By September of 1971 this channel had ceased to flow and a dike extended from plain-

Lloyd J. Walker of Walker & Kennedy, Twin Falls, for defendant-appellant.

E. Lee Schlender of Schlender & Young, Ketchum, for plaintiff-respondent.

tiff's Lot 18 to the northern end of what had been the island between the two channels. This dike, the trial court found, eliminated plaintiff's river frontage and created an area of reclaimed land where the river had once been, and which defendant now claimed as his own.

By the time of trial, a 1974 flood had restored the old shoreline in front of plaintiff's lots and washed away the island as well. The defendant, however, constructed a berm from the southernmost point of Lot 16, apparently to protect other lots from flood water. There was also some evidence of flood damage to plaintiff's property caused by riprap placed upstream.

On appeal appellant alleges as his first assignment of error that the trial court erred when it relied on evidence adduced at a preliminary proceeding but never admitted at trial. It appears from the record that trial was originally set for June 12, 1974 in the district court in Blaine County. Because of another trial, however, the courtroom was not available on that date. Nevertheless, a proceeding was had in another room of the courthouse wherein the trial court took testimony from plaintiff and two of her out-of-state witnesses and admitted certain exhibits. Further proceedings were scheduled for June 25, 1974. This setting was postponed, however, when a conflict developed between defendant and his counsel and new counsel were retained. A final hearing was had on October 24, 1974.

Appellant contends that the June 12, 1974 proceeding was preliminary and in the nature of a procedure to perpetuate testimony. Since none of the testimony or exhibits were formally introduced as evidence in the later proceeding, he argues they are not competent evidence and he was under no obligation to offer evidence in rebuttal. Appellant points to the opening remarks of the trial court on June 12, where it characterized the procedure as a preliminary proceeding solely "for the purpose of perpetuation of testimony." In addition, the trial court stated that "opening

statements and calling of witnesses on the case in chief both of the plaintiff and of the defendant will be reserved for the time when the trial of the case actually takes place * * *."

The nature of the June 12 proceeding is not clearly established by the record. While the opening remarks of the trial court support the appellant's position the court closed the proceeding by remarking that the court was "in recess." The fact that exhibits were admitted and that objections were made and ruled on by the court are more characteristic of a trial than a deposition. Defendant was allowed full cross-examination of all plaintiff's witnesses.

■ Although defendant-appellant's present counsel did not represent him on June 12 they were certainly aware of the proceeding. On July 10, 1974, soon after they were retained, they represented defendant at a hearing on plaintiff's motion to tax costs and expenses incurred when the June 25 trial setting was postponed. At the conclusion of that hearing the trial court sought to arrange a new setting in October. The following colloquy ensued:

"THE COURT: Yes, that's right. Now, will two days suffice without having to go back over those witnesses?

"MR. SCHLENDER: Yes.

"THE COURT: All right.

"MR. WALKER: May I ask, Your Honor, am I bound by what has happened so far as Oliver Martin?

"THE COURT: You mean his testimony and the testimony already taken?

"MR. WALKER: Yes.

"THE COURT: Mr. Laggis at that time was Mr. Simpson's attorney of record, and it was perpetuated and cross examined in his presence. You will be bound by it unless you want to subpoena him as your witness.

"MR. WALKER: They are in California. October would be fine, Your Honor."

Since appellant chose not to subpoena these witnesses he is bound by the testimony and exhibits adduced on June 12. Where he consented to be bound he cannot now complain.

■ Appellant next alleges the trial court erred when it admitted photographs that were not competent evidence because not corroborated by the testimony of witnesses. He claims the court erred where its conclusions were based solely on such pictures. However, appellant does not specify which photographs were improperly relied upon nor does he direct us to the Findings of Fact or Conclusions of Law based on these photographs. "It has been uniformly held by this court that it will not review an assignment which does not point out the particulars in which the alleged error consists." *Bloxham v. Robinson*, 67 Idaho 369, 181 P.2d 189 (1947). Even if well founded, appellant's assignments must be directed to particular error in the record.

In a further assignment of error appellant claims that the trial court viewed the subject property without the permission or presence of the parties. Such a view, he claims, constitutes reversible error. In support of his claims he directs our attention to the affidavit of his counsel filed December 19, 1974, along with his motion for a new trial. The affidavit reads in part as follows:

"During the period between the initial reception by the court of testimony in this matter and the later portion of the bifurcated trial, Judge Theron W. Ward, presiding in this matter, stated to me that he had viewed the property and the adjacent area."

■ In *Lobdell v. State*, 89 Idaho 559, 407 P.2d 135 (1965), this Court found that the trial court erred where it entered findings based on a view of the premises when such inspection was made without notice to the parties. In the present case there is no evidence of such a view by the trial court either in the transcript or in the

Findings of Fact and Conclusions of Law. Although appellant was allegedly aware of the view well before the trial had ended he did not raise the matter until after judgment had been entered. A timely objection would have given the trial court ample time to correct any error. Cf. *Highbarger v. Thornock*, 94 Idaho 829, 498 P.2d 1302 (1972). "[C]ounsel may not secretly nurture an error, speculate upon a favorable verdict, and then, in the event it is adverse, bring forth the error as a life preserver on a motion for new trial." *Agranoff v. Morton*, 54 Wash. 341, 340 P.2d 811 (Wash.1959). Furthermore, it is well settled that an affidavit executed in support of a motion for new trial cannot be used to establish facts which should have been but were not made part of the record in the district court. Such purported error should have been raised at the time it was allegedly discovered. *Hayward v. Yost*, 72 Idaho 415, 424, 242 P.2d 971 (1952); *Carey v. Lafferty*, 59 Idaho 578, 583, 86 P.2d 168 (1938).

Appellant makes several assignments of error concerning the trial court's findings on the boundary issue. Common to each assignment is the assertion that the trial court erred by varying respondent's boundary from that established by the recorded plat. According to appellant "the plaintiff-respondent must move her boundaries to make her case." Appellant concludes that since the evidence admitted at trial concerned only his activities outside of the platted boundaries there was no evidence of any trespass to her property. Since resolution of this issue is dispositive of each of his assignments of error we shall consider them together.

■ Appellant correctly points out that the respondent's boundaries were established by the platted property line. The trial court found, however, that the platted east boundary of plaintiff's property fell directly on the west bank of the then west branch of the Big Wood River, leaving nothing in between. There was substantial

evidence to support this finding. Contrary to appellant's argument, it was not necessary to vary the boundaries established by the recorded plat in order to hold that plaintiff was a riparian owner. Consequently, we find that the trial court's finding that respondent was a riparian owner was supported by substantial and competent evidence and will not be disturbed on appeal. *Randall v. Ganz*, 96 Idaho 785, 537 P.2d 65 (1975).

> "A riparian proprietor has the right, inseparably annexed to the soil, to have the water of a stream flow to and from his land as it has been want to flow, so far as is consistent with the right of other owners to make a reasonable use of such water. It follows that the obstruction of the natural flow of a stream is always done at the risk of being answerable in damages to him who sustains a loss thereby." *Weeks v. McKay*, 85 Idaho 617, 382 P.2d 788 (1963) citing 56 Am.Jur. *Waters* § 18.

Such obstructions have been characterized by the courts as continuing trespasses or nuisances. Annot. 42 ALR3d 426, § 3b (1972). In the present case the fact that appellant's activities were confined to the bed of the river and to areas outside of the respondent's boundaries cannot insulate him from liability for damages resulting from his obstruction of the west channel of the river.

The balance of appellant's assignments of error have to do with the award of damages. The trial court found that appellant's actions totally destroyed the market value of respondent's lots and awarded her the full purchase price of the lots. Appellant asserts that even if a trespass exists, the evidence of damages is too speculative and incompetent to be creditable.

Both the respondent and her witness, Mr. Ensign, a realtor, were questioned extensively at trial concerning the value of the lots. Neither witness was able to assign a dollar value to the lots although both testified the lots were worth less than the amount paid for them. Nevertheless, Mrs. Bradford testified she felt they had some value. Mr. Ensign testified he would not offer the property for sale but felt Lots 17 and 18 were not as severly damaged as Lot 16.

Both respondent and Mr. Ensign based their opinions on the fact that the island had been washed away and that flooding had destroyed some of the scenic value of the property. There was no showing, however, that appellant's activities contributed to this damage. On the contrary, the evidence indicates that the island was washed away by the 1974 flood which restored the respondent's shoreline. Mr. Ensign, who was not an engineer, testified from photographs, stating that further flooding, especially to Lot 16, would be caused by the berm placed at the southern end of Lot 16 by the appellant in 1974. However, Mr. Koonce, an engineer called by the respondent, testified that the flood damage to respondent's property was caused by riprap placed upstream by others and was unrelated to the appellant's activities. He further testified that the berm constructed by the appellant in 1974 would only affect owners farther downstream and not the respondent. We conclude that there was no substantial evidence to support the trial court's finding that defendant-appellant's activities *totally* destroyed the value of plaintiff-respondent's property. Consequently, the finding must be set aside. *Wood v. Sadler*, 93 Idaho 552, 468 P.2d 42 (1970). The cause will be remanded to the district court for further findings necessary to determine the amount of damages caused by the defendant's activities. On remand, respondent will be entitled to damages for any temporary loss of riparian rights between 1971 and 1974.[1]

---

1. The measure of damages for temporary injury to property generally is the diminution in the rental value of the property or the amount necessary to restore the land to its former condition. 78 Am.Jur.2d, Waters, § 35 (1975); *Smith v. Big Lost River Irrigation District*, 83 Idaho 374, 364 P.2d 146 (1961).

Likewise, damages or nuisance caused by the construction of the berm in 1974, if any, will entitle respondent to an appropriate remedy.[2] The trial court may consider any additional evidence that may be submitted on these issues.

The trial court also awarded punitive damages of $25,462.89. Appellant argues that there is no proof that his actions are wanton, malicious, or gross and outrageous as required for a recovery of exemplary damages. *Jolley v. Puregro Co.,* 94 Idaho 702, 496 P.2d 939 (1972). He also asserts that if there is no proof justifying actual or compensatory damages, there can be no award of punitive damages.

The trial court found that the "defendant's testimony was willfully false, willfully misleading and was willfully malicious and wanton. His conduct was in malicious and wanton disregard of the rights of the plaintiff." This finding has ample support in the record. The defendant's testimony was contradictory and often contrary to the testimony of other witnesses. The record indicates he was experienced in real estate matters and supports the finding that his activities were carried on in disregard of the plaintiff's property rights. These findings are sustained by substantial and competent though conflicting evidence and will not be disturbed on appeal. *Randall v. Ganz,* 96 Idaho 785, 537 P.2d 65 (1975).

In the present case a just award of punitive damages must await the trial court's determination of compensatory damages. *Boise Dodge, Inc. v. Clark,* 92 Idaho 902, 453 P.2d 551 (1969). Consequently, we set aside the trial court's award of punitive damages. On remand any award of punitive damages should be based upon the criteria established in *Cox*

*v. Stolworthy,* 94 Idaho 683, 496 P.2d 682 (1972) and *Jolley v. Puregro Co., supra.*

The cause is affirmed in part, reversed and remanded in part. No costs allowed.

McQUADE, C. J., and McFADDEN, SHEPARD and BAKES, JJ., concur.

---

2. I.C. § 42–3809 provides that alteration of a stream channel, as defined in I.C. § 42–3802, may be a misdemeanor and a public nuisance if not approved by the Idaho Department of Water Resources.