Janice M. RIDGWAY, Appellee,

v.

UNITED HOSPITALS–MILLER DIVISION, Appellant.

No. 76–1958.

United States Court of Appeals, Eighth Circuit.

Submitted May 19, 1977.

Decided Oct. 19, 1977.

Bruce E. Hanson of Doherty, Rumble & Butler, St. Paul, Minn., argued, filed appendix and brief, for appellant.

Ellen Dresselhuis, Minneapolis, Minn., argued and filed brief, for appellee.

Before GIBSON, Chief Judge, and BRIGHT and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

United Hospitals-Miller Division, hereinafter called the defendant or the Hospital, appeals from a judgment of the United States District Court for the District of Minnesota[1] holding the defendant liable to plaintiff in damages for sexual discrimination in the matter of pay, prohibited by the Equal Pay Act of 1963, 29 U.S.C. § 206(d).[2] Plaintiff sought to recover double damages, plus costs and a reasonable attorney's fee as provided by § 16(b) of the F.L.S.A., 29 U.S.C. § 216(b).

The defendant denied liability, and the case was the subject of a bench trial after the conclusion of which the trial judge filed a memorandum opinion setting out his findings of fact and conclusions of law. The district court found that plaintiff had been the victim of sexual discrimination in pay in violation of the Act, and that her actual damages amounted to $1995.00. Judgment in favor of the plaintiff was entered in the principal amount of $3990.00 ($1995.00 doubled), plus costs, together with an attorney's fee which the district court set at the sum of $3100.00. The defendant has taken a timely appeal to this court.

The statute, 29 U.S.C. § 206(d)(1), relied on by plaintiff provides:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and re-

---

1. The Honorable Donald R. Ross, United States Circuit Judge, Eighth Circuit, sitting by designation.

2. The Equal Pay Act of 1963, P.L. 88–38, 77 Stat. 56, was adopted as an amendment to § 6 of the Fair Labor Standards Act of 1938. It anticipated the broader anti-discrimination pro-

visions that became Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.

Plaintiff sued originally under both the Equal Pay Act and Title VII of the 1964 Civil Rights Act. However, prior to submission of the case to the district court she abandoned her Title VII claim and elected to stand on the Equal Pay Act claim alone.

sponsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided,* That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

Aside from the questions of sexual discrimination *vel non* and the amount of damages sustained by plaintiff, there is no real dispute about the facts.

The defendant is a Minnesota corporation which is engaged in the business of operating hospitals. The hospital with which we are concerned, and which was formerly known as the Miller Hospital, is located in St. Paul, Minnesota. It has a department of ophthalmology and a department of urology. Surgery in both of those fields is performed by specialists who are aided in their work by appropriate supporting teams including anesthesiologists, technicians and nurses.

Plaintiff has been a licensed practical nurse for more than twenty years and has specialized in ophthalmic surgery. She may properly be called an ophthalmological technician. In 1971 plaintiff was an employee of the Hospital and was receiving a salary of $595.00 per month. It was her duty to perform various tasks in the operating room while ophthalmic surgery was being performed.

In February, 1971 the defendant, after some negotiations, employed Michael Bolz, a male, as a "urological assistant." He performed tasks in the operating room while urological surgery was being performed similar to the tasks performed by the plaintiff in connection with eye operations.

Defendant had never before employed a urological assistant, and the hospital management was somewhat at a loss as to what to pay Mr. Bolz. It was finally decided, however, to pay him $595.00 per month, which was the same salary that the plaintiff was receiving at the time. However, the Hospital represented to Bolz that he would have additional work opportunities in the Hospital that would provide him with additional income.

Bolz was a married man with children, and he desired to buy a home, financing his purchase through a local savings and loan association. In connection with his proposed financing the Hospital furnished to the savings and loan association a projection of Bolz's actual and prospective compensation, which projection included the additional overtime compensation that it was expected that Bolz would receive for work to be performed by him in addition to his regular duties. In making its loan to Bolz the savings and loan association relied at least to some extent on the information supplied by the Hospital.

As stated, Bolz started out at the same salary as that which plaintiff was receiving. Effective July 12, 1971 plaintiff's salary was raised to $620.00 which put her ahead of Bolz as far as stated salary was concerned. Effective August 12, 1971 the salary of Bolz was increased to $620.00 per month which put him on a par with plaintiff. Effective July 10, 1972 plaintiff's monthly salary was raised to $650.00 per month; Bolz received no raise at that time.

By late 1972 it had become apparent that the extra and overtime work that the Hospital had promised Bolz would not be forthcoming, and Bolz became dissatisfied and started looking for another job. The Hospital denied at first that it had promised any overtime to Bolz, but it receded from that position when confronted with the projection that it had furnished to the savings and loan association. The Hospital did not want to lose Bolz, and it was agreed that effective February 27, 1973 his salary would be $700.00 per month as against plaintiff's salary of $650.00 per month. It was also agreed that if Bolz remained in the employ of the Hospital the latter would pay him each month of his continued employment an additional $85.00 per month for as

long as necessary to make up the difference between his actual salary and $700.00 per month for the period between his original employment and February 27, 1973.

Effective April 16, 1973 the salary of plaintiff was increased to $680.00 per month. As of that time Bolz was being paid a basic salary of $700.00 per month plus the additional sum of $85.00 per month in line with the agreement between him and the Hospital.

Plaintiff was highly displeased with the salary differential that has been described, and although the Hospital tried to mollify her and promised to pay her more money at some indefinite time in the future, plaintiff resigned from her position on July 13, 1973 and has not been employed by the Hospital since that time.

On the crucial issue of job comparability, the district court found:

The evidence establishes that the content of the plaintiff's job as an ophthalmology technician was comparable in terms of skill, effort and responsibility to the content of Bolz's job as a urology assistant and that the jobs were performed under similar working conditions. Both jobs entailed surgical assistance. The duties, responsibilities and amount of effort required of both an ophthalmology technician and urology assistant depended on whether the technician or assistant scrubbed or circulated. If the technician or assistant scrubbed, he or she directly assisted the doctor. If the technician or assistant circulated, he or she checked and prepared the surgical room and instruments. Both were responsible for recording a description of the surgical procedure, vital signs, and any drugs administered during surgery. Both were responsible for the safe return of the patient to his or her room following surgery. Both the ophthalmology technician and the urology assistant were responsible for instructing other employees on matters relating to the operation of their respective departments. Based on the testimony of Elaine Metcalf, supervisor for both plaintiff and Bolz, the positions

of ophthalmology technician and urology assistant were comparable under the Hospital's system of evaluating job classifications. The Hospital required comparable qualifications for the two jobs.

Having found the facts, the district court proceeded to draw substantially the following conclusions of law:

■ Under the Act the burden was on the plaintiff to prove by a preponderance of the evidence that the Hospital had paid different wages to employees of opposite sexes "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974). Plaintiff was not required, however, to show "that the jobs were identical, but only that the actual job requirements and performance were substantially equal. *Peltier v. City of Fargo*, 533 F.2d 374, 377 (8th Cir. 1976); 29 C.F.R. § 800.120."

■ Once the plaintiff established that the Hospital had paid Bolz, a male, more than it had paid her, a female, for equal work, the burden shifted to the defendant to justify the differential by reference to one or more of the exceptions appearing in the Act, and the district court cited in that connection *Corning Glass Works v. Brennan, supra,* 417 U.S. at 196, 94 S.Ct. 2223. The district court stated:

. . . The Hospital argues that the wage differential involved herein resulted from an effort to fulfill the promise made to Bolz regarding the increased compensation he could expect to receive over the next few years, and thus was justified under the Act as 'a factor other than sex.' This court rejects this argument. The requirements for this exception are not met unless the factor of sex has nothing to do with the wage differential. *Hodgson v. Security National Bank,* 460 F.2d 57, 59 (8th Cir. 1972); 29 C.F.R. 800.142. The exception was not intended to permit an employer to evade the Act on the basis of such subjective and un-

communicated reasons regarding an individual employee. *Shultz v. Brookhaven,* 305 F.Supp. 424, 426–427 (N.D.Tex.1969). To hold to the contrary would allow employers to evade their responsibilities under the statutes by promising newly hired male employees overtime work which the employer should know might not materialize. The Hospital has not established that the pay differential falls within any of the exceptions under the Act.

The district court then concluded that plaintiff had been the subject of illegal wage discrimination for the entire period between February 8, 1971 and July 13, 1973 when she resigned. And it was also concluded that plaintiff was entitled to a reasonable attorney's fee as provided by 29 U.S.C. § 216(b).

As to attorney's fee, the trial judge was of the view that on the basis of the criteria laid down in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir. 1974), the sum of $3100.00 would be a reasonable fee for plaintiff's attorney, and that amount was awarded.

For reversal, the defendant contends primarily that the district court erred in finding that the defendant had violated the Act with respect to plaintiff. Alternatively, defendant argues that the district court erred in computing damages, and that the award was grossly excessive.

■ The factual findings of the trial judge are entitled to great weight, and under Fed.R.Civ.P. 52(a) we must accept them unless they are clearly erroneous as that term is now conventionally understood in the context of appellate review of the factual findings of a district court. *See Arkansas Education Ass'n v. Board of Education of the Portland, Arkansas School District,* 446 F.2d 763, 770 (8th Cir. 1971), and cases cited. We recognize, of course, that a finding of fact may be clearly erroneous, even if supported by substantial evidence, if upon a review of the entire record the reviewing court forms "the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 1147 (1948).

When the record is considered as a whole, it is clear to us that the defendant did not intend originally to pay Bolz more than it was paying plaintiff for equal work. The parties contemplated that Bolz would receive additional compensation for additional work. The 1973 agreement between the Hospital and Bolz resulted from the fact that the additional work that the parties had contemplated was not forthcoming; and that agreement could have been made with a female urological assistant as well as with a male assistant in that field.

■ We accept the finding of the district court that the actual work that plaintiff performed between February, 1971 and July 13, 1973 was substantially equal to the actual work that Bolz performed during the same period. And, we also accept the finding and conclusion of the district court that when the basic salary of Bolz was raised to $700.00 per month on February 27, 1973 unlawful sexual discrimination against the plaintiff was established at least for the period beginning on February 27 and ending on July 13, and at least to the extent that the $700.00 per month paid to Bolz exceeded the salary paid to plaintiff during that period.

On the other hand, we agree with the defendant that the district court erred when it awarded compensation to plaintiff for the period between the date of the hiring of Bolz and February 27, 1973 when his basic salary was raised to $700.00 per month.

The district court treated the matter as though Bolz was actually being compensated at the rate of $700.00 per month for the entire period between February 8, 1971, when he was hired, and February 27, 1973 when his stated salary became $700.00 per month; we do not think that that approach can be justified either factually or legally.

It is quite true that the $85.00 per month payments, which were to be made in addition to the $700.00 per month salary, were related to the period between February 8, 1971 and February 27, 1973. However,

928

when the record is read fairly, we are convinced that the $85.00 per month payments were not designed to compensate Bolz for work he had done during that period but to compensate him for his loss resulting from the unavailability of the extra work that had been promised to him. Bolz received no lump sum of money as retroactive pay, and his right to receive the $85.00 per month payments depended on his remaining in the employ of the Hospital long enough for the Hospital's obligation to be discharged by means of the $85.00 per month payments. Had Bolz quit the employ of the Hospital in, say, August, 1973, the Hospital's obligation to him would have been at an end.

The result that we reach manifestly calls for a drastic reduction in the award made to the plaintiff and an appropriate reduction in the attorney's fee awarded to her.[3]

To the extent that the district court held the defendant liable to the plaintiff, the judgment of the district court is affirmed. For the rest, the judgment is reversed and the cause remanded to the district court to make a new award of damages based on the period between February 27, 1973 and July 13, 1973 and leaving out of account the $85.00 payments made and to be made to Bolz after July 13, 1973; the district court should also make a fresh determination as to the amount of fee to be awarded to plaintiff or to her attorney.

Affirmed in part, reversed in part and remanded.

BRIGHT, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority's finding of an equal pay violation. However, I would completely affirm the district court.

I believe that on this record the district court properly construed the $85.00 per month prospective payments as additional compensation for Bolz's past work and, therefore, violative of the Equal Pay Act.

---

[3]. Even if we agreed that plaintiff was entitled to a basic judgment in the sum of $3990.00, we would have a great deal of trouble with the $3100.00 allowed as a fee by the district court. That figure is much in excess of the actual damages sustained by plaintiff according to the district court's findings, and it approaches the amount of those damages when doubled as provided by 29 U.S.C. § 216(b).