**C. O. JONES & SONS INSURANCE AGENCY, INC., Charles R. Jones and R. B. Jones, Inc., Appellants,**

**v.**

**MIDWEST TRANSPORTATION CO., INC., Appellee.**

**No. 78–1382.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 12, 1978.

Decided March 14, 1979.

---

William B. Woodruff, Omaha, Neb., for appellants.

Charles L. Smith, Council Bluffs, Iowa and Donald A. Roberts, Omaha, Neb., for appellee.

Before GIBSON, Chief Judge, and BRIGHT and HENLEY, Circuit Judges.

BRIGHT, Circuit Judge.

C. O. Jones & Sons Insurance Agency, Inc., Charles R. Jones, and R. B. Jones, Inc. (collectively, Jones), appeal from a judgment of the district court awarding Jones $18,628.19 as reimbursement for its advancement of premiums on various insurance policies on behalf of appellee Midwest Transportation Co., Inc. (Midwest). The court held Midwest liable for insurance premium payments made on its behalf by Jones, but it found that Jones had failed to exercise due diligence in placing insurance for Midwest. The court, therefore, awarded Jones an amount less than its full claim of $26,584.07. Federal court jurisdiction rests on diversity of citizenship and the requisite amount in controversy.

On this appeal Jones claims entitlement to the entire amount it expended for insurance coverage on behalf of Midwest and contends the district court's conclusion that Jones exercised less than reasonable diligence in procuring the best available insurance terms for Midwest was clearly erroneous. Upon examination of the record, we find merit in the appeal. We vacate the judgment and direct entry of a modified and increased award to Jones.

I. *Factual Background.*

Jones, an organization engaged in the sale of insurance as agent and broker, commenced its association with Midwest, an Iowa corporation engaged in the trucking business as a common carrier, in the fall of 1968. For a number of years Midwest purchased insurance through Russell Cottrell, an employee of Jones. An insurance policy Jones had placed with the Hartford Insurance Company, covering Midwest's bodily injury and property damage liability arising from its trucking operation, was to expire on April 30, 1975. Although Hartford refused to renew the policy, Jones prevailed upon the insurance company to extend its coverage through June 30, 1975, providing Midwest with additional time to procure alternative insurance.

At the behest of Midwest, Jones contacted a number of insurance companies. All but one of the companies, which quoted a prohibitively high premium rate, refused to provide coverage for Midwest. Eventually, the Home Insurance Company, which previously declined to insure Midwest, offered a policy with limited coverage. Jones subsequently obtained an agreement from the Columbia Casualty Company to issue a policy to Midwest providing for the supplementary coverage necessary to meet Interstate Commerce Commission (ICC) requirements.[1] The combined policies afforded Midwest ample insurance protection.

In June 1975, Cottrell informed Frank Chullino, the president of Midwest, that Midwest could obtain satisfactory insurance coverage only through a combination of Home Insurance Company and Columbia Casualty Company policies. Chullino rejected those policies as too expensive, and Jones continued the search for alternative coverage. Chullino informed Cottrell that the Great Western Insurance Company (Great Western) offered him coverage at a lower premium rate than the combined Home and Columbia insurance policies. However, contrary to Cottrell's advice, Chullino declined to purchase the Great Western insurance because Jones would be listed on the policy as the agent. Although

---

[1]. Federal regulations require that insurance coverage for bodily injury and property damage liability arising from the operation of a licensed common carrier's business be maintained at all times. 49 U.S.C. § 315 (1970); 49 C.F.R. §§ 1043.1 and 1043.2 (1977).

he contacted the insurance company on several occasions, Cottrell could not obtain coverage from Great Western for Midwest.

On Friday, June 27, 1975, Cottrell attempted to contact Chullino for instructions relating to placing insurance for Midwest, as the Hartford Insurance extension would terminate in a few days. Chullino was on vacation, and Cottrell could not reach him. Cottrell had not received any quotation for adequate insurance coverage at a price less than that of the combined Home/Columbia policies. Cottrell, lacking other instructions, ordered coverage for Midwest, to begin July 1, 1975, with the Home and Columbia companies, at an annual cost of approximately $110,000.

After returning from vacation, Chullino learned that Jones had placed coverage with Home and Columbia. He ordered that those policies be cancelled and contemporaneously procured coverage equivalent to the Home/Columbia insurance from the Canal Insurance Company and Lloyds of London, at a total premium charge of $65,809 per year. Chullino obtained these policies through the Countrywide Insurance Agency, another insurance agent.

Because ICC regulations require a thirty-day period between notice of insurance cancellation and the effective date of cancellation, the Home/Columbia policies continued in force until August 21, 1975. Over the fifty-two-day period of coverage (July 1–August 21, 1975), Jones incurred liability for premiums to the Home Insurance Company in the sum of $11,297 and to Columbia in the sum of $5,872.14.[2] Midwest refused to pay these premium charges, as well as charges for other policies, and Jones brought this lawsuit seeking recovery of $26,584.07 for unpaid insurance premiums on various policies it had placed for Midwest. Midwest conceded that it had received coverage and that it was liable to

Jones in the amount of $9,414.93 for certain policies. However, Midwest contended that it was not liable for the Home/Columbia policies because they were purchased by Jones without authorization and at an excessive rate.

The district court determined that Midwest incurred a liability for Jones' efforts in obtaining coverage for the fifty-two-day period in question, on the grounds that Jones possessed an "implicit authority" as agent for Midwest to place insurance and thereby avoid any suspension of Midwest's operating permits from the ICC.

However, the district court limited Jones' recovery for insurance premiums to $9,213.26 for the fifty-two days of coverage, declining to award Jones the total amount of $17,169.14 ($11,297 plus $5,872.14) charged by the Home and Columbia insurance companies. The district court found that Great Western coverage would have satisfied Midwest's requirements for insurance and that Jones in the exercise of due diligence should have placed coverage with Great Western. In addition, the court estimated that the premium cost for Great Western insurance was identical to the price for the Canal and Lloyds of London insurance ultimately obtained by Midwest, even though neither party produced any evidence of the cost of appropriate Great Western coverage for Midwest.[3]

## II. *Discussion.*

Jones asserts as clearly erroneous the district court's finding that "in the exercise of due diligence [Jones] should have elected to place coverage with Great Western[.]" On the basis of the record, we agree with Jones' contention.

As already noted, Jones, as agent for Midwest, persuaded the Hartford Insurance

---

2. Because of Midwest's cancellations of the policies, premium payments would normally be figured on a "short rate" basis, which includes penalties for early cancellation. Jones successfully negotiated a reduction from the "short rate" premium of approximately $19,000 to a pro rata basis.

3. In its opinion the district court commented that:

Despite the request of this Court, the parties were unable to produce any evidence at trial of the premium rate for the Great Western policy.

Company to extend its coverage two months beyond the planned cancellation date so as to provide Midwest with additional time to obtain replacement coverage. Jones also earnestly canvassed the available insurance alternatives, contacting at least ten insurance companies.

Most of the companies declined to insure Midwest. However, the Zurich Insurance Company offered insurance at the prohibitive annual cost of $200,000, an overture Jones rejected. Another possibility, coverage from the Home Insurance and Columbia Casualty Companies at a combined annual rate of approximately $110,000, was presented to and rejected by Midwest's president, Frank Chullino.

At trial, Russell Cottrell testified that, in the course of seeking insurance in May-June 1975 to replace the expiring Hartford policy, he spoke on several occasions with Joe Morton, a founder of Great Western Insurance. Great Western, according to Cottrell, declined to provide coverage for Midwest.

Following Cottrell's contact with Great Western, Chullino personally approached the insurance company and purportedly was offered coverage for Midwest at a cost acceptable to him. However, in spite of Cottrell's recommendation to take the insurance, Chullino rejected the Great Western coverage because Jones would appear on the policy as agent.

Subsequent to learning of Great Western's offer to Chullino, Cottrell again contacted Great Western and requested that the company deal directly with Midwest, so as to avert Chullino's objection to listing Jones as agent.

On June 27, 1975, with time running out on the Hartford policy, liability insurance a prerequisite for Midwest's continued operation,[4] and Chullino out of town and apparently unavailable, Jones properly placed insurance for Midwest. Midwest has neither questioned nor cross-appealed the district court's finding that Jones possessed implicit authority to obtain insurance for Midwest.

Thus, the only issue presented on appeal is whether the district court's finding that Jones did not exercise due diligence in obtaining insurance for Midwest should be reversed as clearly erroneous. *See* Fed.R. Civ.P. 52(a). Our standard for review is well settled. Although the factual findings of the trial court are entitled to great weight, they must be declared clearly erroneous if the reviewing court, upon an examination of the entire record, forms "the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Ridgway v. United Hospitals-Miller Division*, 563 F.2d 923, 927 (8th Cir. 1977).

The only evidence of Great Western's amenability to providing insurance for Midwest is Frank Chullino's statement that Great Western offered coverage at a cost similar to that of the Hartford policy. Yet in his trial testimony, Chullino explained that he rejected Great Western coverage because of that company's apparent insistence upon listing Jones as agent on the policy. Midwest supplied no evidence indicating that Great Western offered it an open-ended or continuing proposal for coverage.

In June 1975, in one of his several contacts with Great Western to discuss insurance for Midwest, Cottrell learned that Great Western "would not write the coverage." Moreover, no foundation exists in the record for the assumption that Great Western, even if it had agreed to insure Midwest, would have charged a premium significantly less than the premium cost of the combined Home/Columbia policies. The court's assumption that a Great Western premium would be commensurate with the cost of the combined Canal/Lloyds of London policies rests upon speculation, not proof. Further, the evidence that Midwest ultimately procured insurance at a lower price than Jones obtained does not itself demonstrate lack of due diligence by Jones, because insurance carriers often charge dif-

---

**4.** *See* note 1 *supra.*

ferent premium rates for substantially identical coverage of similar risks. *See Smyth, Sanford & Gerard v. Missouri-Kansas-Texas R. Co.,* 72 F.2d 216 (2d Cir. 1934).

Upon examining the record, we are convinced that the trial court made a mistake in its critical finding of fact, *i. e.,* that Jones should have, or even could have placed insurance with Great Western. Consequently, we vacate the district court's judgment and direct the entry of a modified and increased award which will fully reimburse Jones for the cost of the Home/Columbia policies over the fifty-two days those policies remained in effect.