644 P.2d 355
**Betty HOPPE, an individual,**
**Plaintiff-Appellant,**

v.

**Scott McDONALD, Director of the Idaho Department of Employment and the Idaho Department of Employment, Defendants-Respondents.**

**No. 13659.**

Supreme Court of Idaho.

April 27, 1982.

Lloyd J. Walker, Twin Falls, for plaintiff-appellant.

David H. Leroy, Atty. Gen., R. LaVar Marsh, Jeanne T. Goodenough, Carol Lynn Brassey, Deputy Attys. Gen., Boise, for defendants-respondents.

SHEPARD, Justice.

This is an appeal from a judgment which denied claims of sex discrimination brought by plaintiff-appellant, Betty Hoppe, against her former employers, defendants-respon-dents. Hoppe asserted that while she was employed by the Department she was, on the basis of her sex, denied a promotion, and also that she did not receive pay equal to male co-employees, although her work was substantially equal in nature to male co-employees. Following trial, the district court held that Hoppe had failed to prove that she had been the victim of any unlawful discrimination. We affirm.

Hoppe was employed in the Twin Falls office of the Department from October 1, 1970, through December 13, 1973. She had no college education but had graduated from high school and had a significant amount of prior work experience. She was hired in the highest job classification for which she was qualified in view of her prior work experience, i.e. "Interviewer II", in pay grade 7. It is not disputed that Hoppe was an outstanding employee and received excellent job performance evaluations. Although she received no promotions as such, she did receive several in-grade, or "step" pay increases, which were granted automatically upon an employee's satisfactory job performance. As a result of those pay increases, her salary increased over the three-year period of her employment from $527 to $673 per month.

Hoppe was initially assigned the duties of "Selection and Referral Officer" and she worked in that capacity until January, 1972, when she became an "Employer Relations Representative". In May, 1973, Hoppe was additionally assigned a portion of the duties of "Twin Falls Labor Market Analyst". Prior to Hoppe's employment, one Slotten had performed the duties of "Selection and Referral Officer". Slotten's actual job classification was that of "Employment Counselor", and he was in pay grade 10. Hoppe replaced Slotten as "Selection and Referral Officer". In January, 1972, Hoppe was replaced as "Selection and Referral Officer" by one Clark. Clark held a job title of "Employment Counselor" and was in pay grade 10. When Hoppe was assigned to the position of "Employer Relations Representative", she replaced one Omlid, whose job title was "Employment Consultant II", and was in pay grade 10.

During the summer of 1973, an opening was announced for the position of manager of the Department's office in Jerome. Twelve applicants, including Hoppe, applied for the position. A promotional review board was convened and the applicants were rated. The top three rated applicants were certified to a selecting official, and the top rated applicant, a male, was appointed to the position. Hoppe was not rated among the top three applicants, nor was she the highest rated female applicant.

In the fall of 1973, Hoppe applied for a promotion to the classification of "Consultant I" in pay grade 8. That position was to be filled from a register of the individuals who met the minimum qualifications and who had passed an examination. Hoppe took and passed the exam, was approved for the promotion, would have received the promotion in February, 1974, but she resigned from the Department on December 13, 1973.

Thereafter Hoppe filed a complaint with the Idaho State Commission on Human Rights, alleging sex discrimination in the promotion and pay practices of the Department and also asserting that she had been constructively discharged. That Commission found that the practices and procedures of the Department's promotional policies denied women equal opportunity with men, and concluded that the Department had discriminated against Hoppe, recommending, among other measures, that Hoppe be awarded back pay. The Department refused to conciliate and this action resulted. Upon motion for summary judgment, the district court held that it was bound by the findings of the Commission and granted judgment in favor of Hoppe. On appeal, this court held that the findings and recommendations of the Commission on Human Rights had no binding effect on the district court, and therefore reversed and remanded for further proceedings. *Hoppe v. Nichols*, 100 Idaho 133, 594 P.2d 643 (1979). On remand, a trial *de novo* was held by the district court, sitting with an advisory jury. The district court held that the Department had not discriminated against Hoppe on the basis of her sex and

entered judgment in favor of the Department.

Hoppe first asserts that the district court erred in its utilization of an advisory jury. I.R.C.P. 39(c) provides:

"In all actions not triable of right by a jury the court upon motion or of its own initiative may try any issue with an advisory jury or, the court, with the consent of both parties, may order a trial with a jury whose verdict has the same effect as if trial by jury had been a matter of right."

Here the action was one triable of right by a jury and neither party demanded a jury trial. Hence Hoppe argues that the court was without authority to, on its own motion, try the case with an advisory jury.

Although neither party requested a jury trial or explicitly consented to the use of an advisory jury, neither party objected to the advisory jury. A litigant may not remain silent as to claimed error during a trial and later urge his objections thereto for the first time on appeal. *Bradford v. Simpson*, 97 Idaho 188, 541 P.2d 612 (1975). Ordinarily an objection not made at trial will not be considered on appeal, *Kock v. Elkins*, 71 Idaho 50, 225 P.2d 457 (1950), unless the objection raises a question of jurisdiction, *Briggs v. Golden Valley Land & Cattle Co.*, 97 Idaho 427, 546 P.2d 382 (1976), or that the pleading fails to state a cause of action, *Webster v. Potlatch Forests*, 68 Idaho 1, 187 P.2d 527 (1947). The instant case falls into none of the exceptions to the rule. Nor is this a case in which the trial court committed "plain" or "fundamental" error so substantial as to result in injustice or to take from the appellant a right essential to her case. *Johnson v. Elliott*, 112 Ariz. 57, 537 P.2d 927 (1975); *Heacock v. Town*, 419 P.2d 622 (Alaska 1966); cf. *State v. Haggard*, 94 Idaho 249, 486 P.2d 260 (1971).

Hoppe asserts that the trial court erred in depending upon the advisory jury's answers to the courts interrogatories, rather than making its own independent findings of fact, but this argument is not sup-

ported by the record. The trial court's memorandum decision contains a detailed discussion of the jury's answers to each interrogatory as well as the court's own factual findings in regard to those interrogatories. While the court's findings are largely in agreement with those of the advisory jury, there is some specific disagreement with the jury's answers and it is thus clear that the trial court did not believe itself bound by the advisory jury's findings and made its own independent findings of fact.

 Hoppe next asserts that the trial court erred in its finding that Hoppe was not denied promotion to the position of manager of the Department's Jerome office by reason of her sex. I.C. § 67–5909, upon which Hoppe's claim is based, provides in pertinent part:

"Acts prohibited. It shall be a prohibited act to discriminate against a person because of, or on the basis of, race, color, religion, sex or national origin, in any of the following:

(1) For an employer to fail or refuse to hire, to discharge, or to otherwise discriminate against an individual with respect to compensation or the terms, conditions or privileges of employment..."

Federal case law under Title VII, 42 U.S.C. § 2000e–2(a), is instructive as to the necessary quantum of proof and the applicable standards for adjudication in sex discrimination cases. *Bowles v. Keating*, 100 Idaho 808, 606 P.2d 458 (1979).

It is held that a plaintiff alleging unlawful discrimination must prove by a preponderance of the evidence that she applied for an available position, for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Here Hoppe presented a prima facie case creating the inference of sex discrimination, thus shifting to the Department the burden to "articulate some legitimate nondiscriminatory reason" for Hoppe's rejection. *McDonnell Douglas, supra*, 411 U.S. at 802, 93 S.Ct. at 1824. *Burdine, supra*, clarified the nature of the burden that thus shifts to the defendant:

"The burden that shifts to the defendant ... is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons. [citation]. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity." 450 U.S. at 254–55, 101 S.Ct. at 1094. (footnotes omitted).

Here the evidence of the Department, if believed by the trial court, rebutted the inference of discrimination raised by Hoppe's prima facie case. The evidence of the Department indicated that Hoppe was not rated among the top three candidates for the job and that she was not even the top-rated female applicant. It also indicated that Hoppe was rejected because of her lack of qualifications relative to the other applicants; *i.e.*, that Hoppe had no experience in the field of unemployment insurance, which was a major program administered by the Department and that she had no supervisory experience. On the other hand, the individual selected for the position had experience in all of the Department's programs, and had exhibited superior performance in a supervisory position

within the Department for nearly three years.

Thus the Department's evidence could be viewed as articulating a legitimate nondiscriminatory reason for Hoppe's rejection, and further, as tending to indicate that the person hired for the position was better qualified than was Hoppe. Such a showing exceeded that necessary to merely rebut Hoppe's prima facie case. *Burdine, supra.* The burden of production then returned to Hoppe, merging with her ultimate burden of persuasion as set forth in *Burdine, supra.*

"The plaintiff retains the burden of persuasion. She now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine, supra,* 450 U.S. 256, 101 S.Ct. 1095.

Hoppe thus had and was given the opportunity to produce any additional evidence that the reasons proffered by the Department in its evidence for her rejection was merely pretextual. Hoppe offered no such evidence but chose to rest on the evidence she had already introduced, the inferences to be drawn therefrom, and her cross-examination of the Department's witnesses. Thereafter the trial court found no "sex discrimination or, in fact, unlawful discrimination of any kind."

A trial court's findings of fact will not be reversed unless they are clearly erroneous or not supported by substantial and competent evidence. I.R.C.P. 52(a); *Cougar Bay Co. Inc. v. Bristol,* 100 Idaho 380, 597 P.2d 1070 (1979); *Baker v. Ore-Ida Foods, Inc.,* 95 Idaho 575, 513 P.2d 627 (1973). Here substantial and competent evidence supports the trial court's finding that the Jerome promotion was not denied to Hoppe on the basis of her sex and therefore those findings will not be disturbed.

Hoppe next asserts that because of her sex, she was denied pay equal to that of male employees, even though she and the male employees performed substantially equal work. She asserts that the trial court erred in its finding that her work was *not* equivalent in nature to the work being performed by male employees in higher pay grades.

Both I.C. § 67–5909, and Title VII, 42 U.S.C. § 2000e–2(a)(1), prohibit discrimination as to compensation on the basis of sex. Federal Courts when presented with equal pay claims asserted under Title VII have looked to decisions interpreting the Equal Pay Act, § 6(d) of the Fair Labor Standards Act, 29 U.S.C., § 206(d), for guidance. *Gunther v. County of Washington,* 602 F.2d 882 (9th Cir. 1979), *aff'd on other grounds,* 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981); *Hays v. Potlatch Forests, Inc.,* 465 F.2d 1081 (8th Cir. 1972). As to equal pay claims asserted under I.C. § 67–5909, this Court will also look to decisions under the Federal Equal Pay Act, *supra.*

A claimant has the burden of proving that she did not receive equal pay for equal work, but is not required to show that the jobs performed were identical. *Gunther v. County of Washington, supra; Peltier v. City of Fargo,* 533 F.2d 374 (8th Cir. 1976); *Usery v. Allegheny County Institutions District,* 544 F.2d 148 (3d Cir. 1976). Rather unlawful discrimination may be shown by proving that the skill, efforts and responsibility required in the performance of the jobs are substantially equal *Gunther, supra; Usery v. Columbia University,* 568 F.2d 953 (2d Cir. 1977); *Ridgway v. United Hospitals-Miller Division,* 563 F.2d 923 (8th Cir. 1977). In that determination, it is the actual job performance in content which is significant rather than job titles, classifications or descriptions. *Katz v. School District of Clayton, Missouri,* 557 F.2d 153 (8th Cir. 1977); *Hodgson v. Miller Brewing Co.,* 457 F.2d 221 (7th Cir. 1972). It is the overall job, and not its individual segments, which must form the basis of comparison. *Gunther, supra.* We hold that

the trial court's findings of fact that Hoppe did not perform work equivalent in nature to work being performed by male employees in higher pay grades is supported by substantial and competent evidence and hence is not "clearly erroneous". I.R.C.P. 52(a); *Cougar Bay Co., Inc. v. Bristol, supra; Baker v. Ore-Ida Foods, Inc., supra.*

Hoppe contends that during her period of employment with the Department she continually replaced males who were in higher pay grades than she was and that when she was assigned new duties, males in higher pay grades assumed her prior duties. When she began her employment in the Department's Twin Falls office, Hoppe, in pay grade 7, replaced Roy Slotten who was in pay grade 10, as "Selection and Referral Officer". When Hoppe became an "Employer Relations Officer," Brian Clark, also in pay grade 10, replaced her as "Selection and Referral Officer." The record shows that Slotten and Clark were in the job classification of "Employment Counselor" and that their primary duties involved specialized counseling of individuals who sought to use the Department's services. A counselor was at that time required to possess a bachelor's degree and at least 30 graduate hours in counseling and guidance. Hoppe was in the "Interviewer II" job classification. As a "Selection and Referral Officer," she interviewed applicants referred to her by counselors to select the priority the applicants had under the law and to refer them for training in various programs administered by the Department, but she did no counseling herself. The record also indicates that selection and referral duties were performed by individuals in pay grades 6 through 10. "Selection and Referral Officer" also was shown to be a working title, not a job classification. Though Hoppe may have assumed some of Slotten's duties in regard to selection and referral, substantial evidence supported the finding that she did not perform functions which were substantially equal to those performed by Slotten. Similarly, though, Brian Clark assumed part of Hoppe's selection and referral duties when Hoppe became "Employer Relations Representative," substantial

evidence supported the finding that Clark's primary duties were substantially different from Hoppe's. Even though all three were at various times given the working title of "Selection and Referral Officer," the duties performed by Hoppe differed significantly in terms of skill, effort and responsibility, from the duties performed by Slotten and Clark. Slotten and Clark were paid more than Hoppe because their primary duty was counseling which they performed in addition to their selection and referral duties.

When Hoppe became an "Employer Relations Representative," she replaced Emil Omlid who was in pay grade 10 and who was in the job classification of "Employment Consultant II." The record indicates that Omlid's primary duty was as the "Veteran's Employment Representative." "Employer Relations Representative" was shown to be a working title, not a job classification, and the record also showed that employer relations duties were performed by individuals in pay grades 6 through 12. The purpose of the employer relations function was to encourage employers to use the Department's services. Though Hoppe may have assumed a portion of Omlid's duties, substantial evidence supported the finding that the primary function performed by Omlid was substantially different than that performed by Hoppe.

The duties of a Labor Market Analyst, a position in pay grade 8, included gathering data on the economy in a given geographic area, analyzing statistical data, producing a newsletter and preparation of statistical studies. A "Labor Market Analyst" was required to have a college degree in mathematics, including credits in statistics and economics. When the Twin Falls Analyst resigned, Hoppe was assigned the job of reading the local newspapers and clipping articles from them in order to keep current on the local labor situation. Part of this information was then included in the Twin Falls Labor Market Report. Before a new Analyst was hired in the Twin Falls office, "Labor Market Analysts" from Boise and Pocatello performed the technical duties normally performed by the Twin Falls Ana-

lyst. Though Hoppe may have assumed a portion of the duties normally performed by the Twin Falls Labor Market Analyst, the record supports the finding that she did not perform all of those duties and certainly not the primary duties of the Analyst.

We have considered Hoppe's remaining assignments of error and find them to be without merit. The judgment of the district court is affirmed. Costs to respondents.

BAKES, C. J., and McFADDEN, J., concur.

DONALDSON, J., sat but did not participate.

BISTLINE, Justice, concurring and dissenting:

I agree with the majority that Hoppe is foreclosed on appeal from contesting the propriety of using an advisory jury since no objection to such procedure was entered below. I agree that the trial court did not improperly depend upon the findings of the advisory jury. I also agree that the record supports the trial court's conclusion that Hoppe was not denied promotion to the position of manager of the Department's Jerome office on the basis of her gender (although the opposite conclusion would also be supported by the record). In fact, the majority's discussion of the respective burdens of proof of parties in sex discrimination cases brought under I.C. § 67–5909 lays to rest that small doubt which I expressed concerning the discussion of that issue in *Bowles v. Keating*, 100 Idaho 808, 606 P.2d 458 (1980). I cannot agree, however, with the majority's conclusion that Hoppe was not denied equal pay.[1]

### I.

Initially, I am unsure of what the majority is affirming in the area of equal pay. The majority opinion states that "the trial court's findings of fact that Hoppe did not perform work equivalent in nature to work being performed by male employees in higher pay grades is supported by substantial and competent evidence and hence is not 'clearly erroneous.'" I can find no such finding of fact in the record. The trial court made several findings of fact in connection with Hoppe's claims that she was denied promotions to *specific positions* because of her sex. The closest that the trial court came to making a finding regarding equal pay, however, was that "the evidence did not establish any one assignment which required a higher rating and which plaintiff continuously performed."

This, of course, does not directly address the question of discrimination in respect to pay since, as the majority states, a "claimant ... is not required to show that the jobs performed were identical." *See Gunther v. County of Washington*, 602 F.2d 882 (9th Cir. 1979), *aff'd on other grounds*, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981). In fact, a claimant is not required to "compare" the claimant's job at all with any other job in order to make out a prima facie case of sex discrimination. Comparisons may be *useful* in showing that a claimant's salary is lower than that which would be paid to a member of the opposite sex performing the same function, but they are not required. All a claimant needs to show is that he or she has been "discriminate[d] against ... because of, or on a basis of ... sex ... with respect to compensation or the terms, conditions or privileges of employment ...." I.C. § 67–5909(1).

In *County of Washington v. Gunther*, 452 U.S. 161, 101 S.Ct. 2242, 2252, 68 L.Ed.2d 751 (1981), the Supreme Court expressly recognized that claims of gender-based wage discrimination were not dependent upon comparison with salaries paid to members of the opposite sex. The Court reasoned:

had the claimant been a member of the opposite sex, that constitutes prohibited discrimination "with respect to compensation or the terms, conditions or privileges of employment." I.C. § 67–5909(1).

---

1. As I explain *infra,* the term equal pay does not necessarily refer to claims based on comparisons between specific jobs. Under I.C. § 67–5909 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* whenever wages are lower than they would have been

"Under petitioner's reading of the Bennett Amendment, only those sex-based wage discrimination claims that satisfy the "equal work" standard of the Equal Pay Act could be brought under Title VII. In practical terms, this means that a woman who is discriminatorily underpaid could obtain no relief—no matter how egregious the discrimination might be—unless her employer also employed a man in an equal job in the same establishment, at a higher rate of pay. Thus, if an employer hired a woman for a unique position in the company and then admitted that her salary would have been higher had she been male, the woman would be unable to obtain legal redress under petitioner's interpretation. Similarly, if an employer used a transparently sex-biased system for wage determination, women holding jobs not equal to those held by men would be denied the right to prove that the system is a pretext for discrimination."

Speaking to a discrimination claim brought under the Equal Pay Act, 29 U.S.C. § 206, the Fifth Circuit Court of Appeals in *Hodgson v. Brookhaven General Hospital*, 436 F.2d 719, 724 (5th Cir. 1970) held that "[t]he controlling factor under the Equal Pay Act is job content—the actual duties that the respective employees are called upon to perform. Job descriptions prepared by the employer may or may not fairly describe job content." While Hoppe's claim was not prosecuted under the Equal Pay Act, I agree with the majority's conclusion that decisions under the Equal Pay Act should apply to claims of discriminatory compensation brought under I.C. § 67–5909. I.C. § 67–5909 and Title VII are clearly broader than the Equal Pay Act, but the Equal Pay Act, and decisions thereunder, do provide useful guidance in recognizing discriminatory compensation plans. *See Boyd v. Madison County Mutual Insurance Co.*, 653 F.2d 1173 (7th Cir. 1981). Employers may not shelter themselves under either I.C. § 67–5909, Title VII or the Equal Pay Act, 29 U.S.C. § 206, from liability for discrimination in compensation by artfully classifying positions or pay scales. By the same token, employers may not require women to perform duties above their pay categories without additional compensation if similarly situated men are not required to perform those duties or if men perform those duties but receive additional compensation.

"As Congress itself has indicated, a 'broad approach' to the definition of equal employment opportunity is essential to overcoming and undoing the effect of discrimination. S.Rep.No. 867, 88th Cong. 2d Sess., 12 (1964). We must therefore avoid interpretations of Title VII that deprive victims of discrimination of a remedy, without clear congressional mandate." *Gunther, supra*, 101 S.Ct. at 2252.

The record shows that Hoppe performed a variety of duties—several of which were also performed by people in higher pay categories. The Employer Relations Representative (ERR) position, for example, constituted a substantial portion of the duties performed by Emil Omlid, whom Hoppe replaced as the ERR for the Twin Falls area. Omlid was responsible for placements and for ERR until 1971, when he also assumed responsibility for the veterans program. At this time he began training Hoppe for the ERR position and she took over that position in January of 1972, when Omlid became the "Veteran's Employment Representative." Contrary to the assertion by the majority, the record does not indicate "that Omlid's primary duty was as the 'Veteran's Employment Representative.'" Rather, at the time that Omlid *assumed* the duties of Veteran's Employment Representative and turned the ERR responsibilities over to Hoppe, he was the person responsible for employer relations. The record does not reflect how much of Omlid's time at this point was devoted to employer relations and how much to his other duties. Omlid's primary duty became that of Veteran's Representative only after he turned the lion's share of the ERR responsibility over to Hoppe. The majority correctly states that ERR "was shown to be a working title, not a job classification, and the record also

show[s] that employer relations duties were performed by individuals in pay grades 6 through 12." The majority is *incorrect*, however, in its conclusion that "substantial evidence supported the finding that the primary function performed by Omlid was substantially different than that performed by Hoppe."

First, no such finding was made. In regard to the difference in *classification* (not pay or duties actually performed) between Hoppe and Omlid, the court found only that "Omlid was rated higher than plaintiff, not because he too had done some ERR work, but because he had been employed by the department since 1967 and carried a rating of Employment Consultant II."[2] The trial court made no finding in respect to the relative amount of time Omlid spent on ERR duties and the record does not reveal this information.

Second, the record *does* reveal that, while many employees performed ERR functions, only one person in the office had primary responsibility for employer relations. For example, Omlid himself testified in regard to mandatory reports filled out after employer visits that "Betty was the one that made most of those reports." A list of personnel that performed employer relations functions throughout the State, compiled by the Department of Employment itself and introduced into evidence below, reveals that Hoppe spent approximately 75% of her time engaged in employer relations activity. In no other state office on this list did a single employee spend such a large percentage of time engaged in employer relations, with the exception of the Boise office, where one employee spent 95% of his time engaged in employer relations. This employee, a male, was classified as a Manpower Consultant II, which falls in the grade 9 category under the Department's own classification system—two grades above Hoppe's grade.

The Department is able to correctly state that most employee's were engaged to some extent in employer relations, but only be-

cause the Department's definition of "employer relations" is so broad. According to the Department, whenever a Department employee would contact an employer to refer a potential employee or to inquire into openings, this constituted performance of an "employer relations" function. This, however, is a far cry from the job in which Hoppe was engaged. Hoppe made radio and television appearances, contacted employers for the general purpose of promoting the Department's services, as opposed to discussing specific candidates for employment, collected and coordinated employer information obtained by other Department employees in contact with employers, and in addition occasionally took specific candidates to employers. The State printed business cards for Hoppe designating her as the ERR for the Twin Falls office, and she was apparently the only one who was given such cards.

In July 1972, in response to a federal directive, the State initiated an "Employer Relations Program." This program, outlined in a 20 page "Employment Service Program Letter No. 438," involved an extensive new system of forms, employer contacts and information distillation. It is undisputed that Hoppe had *primary* responsibility for implementing this program in the Twin Falls area, and that she performed duties in this regard far beyond those of other employees who occasionally engaged in an ERR function.

The advisory jury specifically found, in its answer to the court's special interrogatory number 8, that "[Hoppe] was performing duties above her [pay] grade level." The trial court never disputed this finding because it did not specifically address the question of whether the compensation paid to Hoppe was lower than it would have been had she been a man performing the same functions.

I do not point out these facts because I believe they unequivocally compel a finding that Hoppe's compensation was artificially low because of her sex. I point them out

---

2. This statement is somewhat circular—the fact that Omlid "was rated higher ..., because

he ... carried [a higher rating]" does not explain the underlying basis for the classification.

because they, along with the rest of the record, present enough of a case on the issue of equal pay to *at least* require findings, and the application of relevant law, by the trial court on that issue. No such findings or conclusions were made.[3]

I.R.C.P. 52(a) provides in part that:

"Findings by the court—Effect.—In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for the purposes of review."

Only last year we unanimously held, in *Owen v. Boydstun*, 102 Idaho 31, 36, 624 P.2d 413, 418, (1981), that "findings on issues before a trial court must necessarily be made by the court pursuant to Rule 52(a) before this Court may perform its appellate function of 'ascertaining whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law.'" *See Morris v. Frandsen*, 101 Idaho 778, 621 P.2d 394 (1980); *Industrial Investment Corp. v. Rocca*, 100 Idaho 228, 596 P.2d 100 (1979); *Perry Plumbing Co. v. Schuler*, 96 Idaho 494, 531 P.2d 584 (1975).

We also held in *Owen* that "it is the rule in Idaho that neither an objection to findings nor a request or motion for findings is a prerequisite to appellate review and such failure to bring the matter to the attention of the trial court does not waive the right to bring it up on appeal." *Owens, supra*, 102 Idaho at 35–36, 624 P.2d at 417–18. Although Hoppe did not raise the issue of the absence of any findings or conclusions on the equal pay issue in her brief, she did raise and discuss the issue at oral arguments and the issue is therefore presented to this Court for review. *See State v. Dennard*, 102 Idaho 824, 642 P.2d 61 (Bakes, C. J., dissenting). Even if the issue had not been raised on appeal, I would hesitate to affirm a lower court decision when the basis for that decision was not set forth by the court below. For example, as I have attempted to demonstrate, the law in the area of equal pay is extremely complex, and the record herein contains substantial evidence that Hoppe, for the services she was performing, was underpaid. The advisory jury specifically found that Hoppe was performing duties above her pay grade level. While a contrary conclusion could also be drawn from the record, there is simply no way to determine whether the trial court correctly applied the law to the facts in arriving at its ultimate conclusion that "[a]ll of the discrimination shown by defendant was reasonable and based upon substantial justifications." Being somewhat uncertain what I would be affirming, if I so voted, I would remand for either a new trial or for specific findings of fact and conclusions of law in the area of equal pay, if the trial court should feel that it still has a sufficiently clear memory of the evidence presented to obviate the need for a new trial. Otherwise, a new trial is clearly in order, limited to the particular issue wherein it appears Hoppe should likely prevail. *See Stecklein v. Montgomery*, 98 Idaho 671, 570 P.2d 1359 (1977) (Bistline, J., specially concurring).

I dissent.

---

**3.** I have focused on Hoppe's ERR responsibilities for purposes of demonstrating the inadequacy of the findings below. I also note that no findings were made on Hoppe's claim that she was denied meritorious increases because of her sex. In this regard, I note that the state introduced evidence that meritorious increases were statistically neutral on a statewide basis, but that this does not necessarily rebut Hoppe's claim of discrimination in the Twin Falls office. *See Kouba v. Allstate Ins. Co.*, 523 F.Supp. 148 (E.D.Cal.1981) (Equal Pay Act's emphasis on the gender of employees as a group does not preclude a particular woman from demonstrating that she, as contrasted with women employees as a group, was discriminated against in pay on the basis of sex).