594 P.2d 643

**Betty HOPPE, an Individual, Plaintiff-Respondent,**

**and**

**Idaho Human Rights Commission, Plaintiff,**

**v.**

**Glenn W. NICHOLS, Director of the Department of Employment and the Department of Employment for the State of Idaho, Defendant-Appellant.**

No. 12684.

Supreme Court of Idaho.

May 9, 1979.

**134**

Wayne L. Kidwell, Atty. Gen., R. LaVar Marsh, Deputy Atty. Gen., Boise, for defendant-appellant.

Lloyd J. Walker of Walker & Kennedy, Twin Falls, for plaintiff-respondent.

I. FINDINGS OF FACT, CONCLUSIONS AND RECOMMENDATIONS:

*FINDINGS*

1. Complainant, Betty Hoppe, filed a charge with this Commission on January 20, 1974.

2. In her charge, Complainant alleged that she was denied meritorious salary increases and promotional opportunities because of her sex in violation of *Idaho Code* 67–5909 and that, on December 13, 1973, she resigned under duress to protest against the sex discrimination she experienced in the Twin Falls Office of the Department of Employment.

3. Complainant began employment with Respondent on October 1, 1970, and continued that employment until December 13, 1973.

4. Complainant was hired at the level of "Interviewer II" at a salary of $527.00 per month. On April 1, 1971, she completed her probationary period, her appointment status became "permanent" and her salary was increased to $553.00 per month. On December 1, 1971, and October 1, 1972, Complainant received "in-grade" increases which raised her salary to a level of $673.00 per month. Her salary remained at that level until she was separated from the Department of Employment in December of 1973.

5. During the course of her employment with Respondent, Complainant received periodic work performance evaluations. Her ratings were uniformly and remarkably high.

6. In the course of her employment with Respondent, Complainant had numerous and varied responsibilities and duties but, after her first year with Respondent, was to devote most of her time and talents to developing and implementing an Employer Relations Program. Complainant had primary responsibility for what the record indicates was an almost uniquely successful program.

SCHROEDER, Judge, Pro Tem.

The issue presented on appeal is whether the District Court was correct in its conclusion that it was bound by the findings of the Idaho Commission on Human Rights that the plaintiff-respondent is entitled to an award of back pay.

On January 20, 1974, Betty Hoppe, an employee of the Department of Employment, filed a complaint with the Idaho Human Rights Commission alleging discrimination in the Department's promotion practices. Hearings were held before the Idaho Human Rights Commission at which time evidence was submitted in support of and in opposition to Betty Hoppe's claim of sex discrimination. Following the hearings the Human Rights Commission issued "Findings of Fact, Conclusions and Recommendations," on July 3, 1975.[1]

7. Complainant has alleged that Respondent employed twenty-three (23) persons with employer relations duties throughout the State and that all but herself were men and that all of those men were paid more than she was. This allegation is not supported by evidence before the Commission and the record indicates that the duties of the Employer Relations Representative position were generally distributed among a number of persons, both male and female, at pay grades both higher and lower than Complainant's.

8. The Commission finds that during the period of Complainant's employment with Respondent, four (4) employees in Respondent's Twin Falls Office were given meritorious increases. All were males.

9. The Commission finds that Complainant regularly and clearly expressed to her supervisor(s) her interest in career advancement within the Department of Employment.

10. The Commission finds that as early as 1969 the U.S. Department of Labor advised the State Department of Employment that it should facilitate the career advancement of "pre-professionals" by eliminating formal educational requirements and allowing the substitution of related work experience as the qualifying factor for advancement (See Respondent's Exhibit "G").

11. The Commission finds that prior to January of 1973, Complainant was barred from consideration for promotion by educational requirements which, by the admission of Respondent's own chief personnel officer, acted as "artificial barriers" to advancement by women and minorities.

12. The Commission finds that the promotional procedures and practices in effect in Respon-

Note 1—Continued

dent's Twin Falls Office between 1970 and 1974 militated against the promotion of women. We find that Respondent did not provide its managers (nearly all male) with the kind of clearly delineated and firmly mandated affirmative action goals or guidelines which might have focused serious attention on the need to work for the hiring and promotion of women into midlevel management positions. It is not surprising that, without such goals and guidelines, promotional decisions continued to be influenced by sex-determined social relationships and other sex-biased cultural factors which worked to deny women seeking such positions an equal opportunity to be considered for them.
13. The Commission finds that the use of all male "review" boards to evaluate the qualifications of persons applying for promotions tended to work against the consideration of women for those positions.
14. The Commission finds that Complainant resigned under duress and to protest the sex discrimination she had experienced while employed by Respondent.
15. The Commission finds that women were grossly underrepresented in pay grades 8 through 16, and particularly in grades 10 through 16 during 1970–1973, and that as late as February of 1974 only ten percent (10%) of the persons in pay grades 10 through 16 were women while Respondent's work force was forty-five percent (45%) female. Other statistical data provided by the Department of Employment establishes clearly that women were infrequently promoted to or hired into pay grades 8 through 10 while males were infrequently hired into pay grades lower than 8. Respondent has attempted to explain these figures by responding that women do not often apply for positions in pay grades 8 through 16. Given Respondent's demonstrated failure to take more positive steps to attract women to fill such positions, the Commission cannot credit this explanation.

CONCLUSIONS

1. The Commission concludes that Respondent did discriminate against Complainant on the basis of sex and in violation of *Idaho Code* 67–5909.
2. On the basis of the evidence before this Commission, we are forced to conclude that Complainant was constructively discharged by Respondent. We conclude that Complainant reasonably decided that Respondent had, in the past, and would, in the future, limit her opportunities for promotion because of her sex. Complainant reasonably surmised that to continue seeking promotions would amount to an "empty act" (see *United States v. Local 36, Sheetmetal Workers,* 416 F.2d 123 (8th Cir., 1969)), and we conclude that her resignation was directly precipitated by Respondent's unlawful employment practices, was a foreseeable consequence of those unlawful practices and constitutes a constructive discharge, occasioned by Complainant's sex and unlawful

within the meaning of *Idaho Code* 67–5911. See E.E.O.C. Decision No. 72–2062 (June 22, 1972), E.E.O.C. Decisions, C.C.H. para. 6366.
3. On the basis of the evidence presented to it in the course of its Hearing in this matter, the Commission concludes that promotional policies of Respondent were so vague and subjective and so influenced by sex biased cultural considerations that Respondent's promotional decisions were almost inevitably sex biased. The use of all male review boards to make recommendations for promotion, the absence of any clearly delineated, widely disseminated affirmative action guidelines, the absence of any evidence that Respondent made good faith efforts to encourage and insure the promotion and employment of women in pay grades 8 through 16, and, above all, the essentially unrebutted statistical evidence that women were not hired into or promoted into pay grades 8 through 16 in representative numbers, compels the Commission to conclude that Complainant was discriminated against because of her sex and that sex biased factors influenced hiring and promotional decisions throughout the Department of Employment. Evidence of record indicates that hiring and promotional decisions were largely based on the subjective recommendations of Respondent's male supervisory staff and that, in the absence of formal objective guidelines for hiring and promotion, the circumstances presented a ready mechanism for discrimination. See *Rowe v. General Motors,* (457 F.2d 348 (CA5 1972); *Brown v. Gaston County Dyeing Machine Co.,* (457 F.2d 1377 (CA4, 1972) and Equal Employment Opportunity Commission Decisions No. 73–0520 (June 14, 1973), Decision No. 74–41 (October 3, 1973) and No. 74–53 (November 12, 1973), *E.E.O.C. Decisions,* CCH paragraphs 6389, 6408 and 6410.

Statistical probability is increasingly being used to infer the existence of a pattern or practice of discrimination. See *Bing v. Roadway Express,* 444 F.2d 687 (3CA, 1971); *Parham v. Southwestern Bell Telephone Company,* 433 F.2d 241 [421] (8CA, 1970); *Rios v. Enterprise Steamfitters, Local 638,* 326 F.Supp. 198 (S.D.N.U.[Y], 1971); and *Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239 (3CA, 1975). See also *E.E.O.C. Decisions,* CCH paragraphs 6381, 6389, and 6410.

4. The Commission concludes that while Complainant was apparently not the only female with employer relations duties, and while she was not the lowest paid of the persons with such duties, the duties she did perform called for skill, effort, and responsibility qualitatively and quantitatively comparable, though not identical to that demanded of males in higher pay grades. The prevailing legal opinion is that a difference in administrative units, departments, job classifications or job titles is not dispositive of the equal pay issue; application of an equal pay standard is not dependent on classifications or titles but on actual job re-

The Commission found that promotional procedures and practices, influenced by sex-determined social relationships and other sex-biased cultural factors, worked to deny women equal opportunity with men in seeking promotion. As a result of its findings the Commission concluded that the Department of Employment did discriminate against the respondent and recommended, among other matters, that she be awarded back pay equal to the difference she would have received between January 1, 1973, and December 13, 1973, had she been classified at a higher pay grade.

The Department of Employment refused to conciliate and made no effort to appeal the "Findings of Fact, Conclusions and Recommendations" of the Commission on Human Rights. The Commission sought to enforce its Recommendations in district court and the respondent Betty Hoppe was added as a party to that action. Motions for summary judgment were submitted by all parties. The district court determined that it was bound by the findings of the Commission on Human Rights to the effect that the appellant had discriminated against Betty Hoppe in view of the Department's failure to appeal the findings and recommendations of the Commission pursuant to the Administrative Procedure Act. The district court based its decision on the conclusion that the proceeding before the Human Rights Commission was a "contested case." As a consequence, the District Court determined that Betty Hoppe was entitled to an award of back pay as recommended by the Human Rights Commission.

A "contested case" within the meaning of the Administrative Procedure Act is a pro-

Note 1—Continued

quirements and performance. The courts have expressly recognized that the real issue is whether equal skill, effort and responsibility are being exercised by employees working under similar conditions. See for example *Schultz [Shultz] v. Wheaton Glass Co.,* 421 F.2d 259 (3CA, 1970), cert. den. 398 U.S. 905, 26 L.Ed. 2de [2d] 64, 90 S.Ct. 1696; *Schultz [Shultz] v. American Can Co.,* 424 F.2d 356 (8CA, 1970); *Hodgson v. Miller Brewing Co.,* 457 F.2d 221 (1973); *Brennan v. Woodridge School District,* Case No. 74-103, July 16, 1974 (D.C., Delaware, 1974). Based upon the above FINDINGS AND CONCLUSIONS, it is hereby recommended that Respondent remedy the discrimination which has been practiced by entering the following terms of conciliation:

*RECOMMENDATIONS*

1. Respondent shall immediately offer to reinstate Complainant to a position at pay grade 10 or higher in Respondent's Twin Falls, Jerome or Gooding offices.

2. Respondent shall award Complainant backpay from the date of her termination to the date of her reinstatement at the rate of compensation she would have received had she been in pay grade 10, step 3, during that entire period, plus 8% interest less any interim earnings and legal deductions. In addition, Respondent shall award Complainant backpay in an amount equal to the difference between the compensation she received between January 1, 1973, and December 13, 1973 and the amount she would have received had she been classified at pay grade 8, step 3, plus 8% interest less any legal deductions.

3. Respondent shall take affirmative steps to eliminate historical and traditional patterns and discrimination against female employees in job classifications and training programs and shall immediately undertake a methodical re-evaluation of the qualifications of all female employees for the possibility of up-grading and promotion and to insure that each is employed to her highest levels of skill and ability. Copies of any documents related to this re-evaluation shall be submitted to this Commission.

Respondent shall immediately design, and shall implement within 60 days of receipt of this RECOMMENDATION, a plan to promote, to train as necessary, or to transfer to positions with better or more numerous opportunities, any and all female employees identified pursuant to the re-evaluation referred to above.

4. Respondent shall appoint a full Affirmative Action Officer and shall formulate and, within 60 days of receipt of these RECOMMENDATIONS, submit to this Commission for its review an Affirmative Action Plan which shall include goals and timetables which will insure equal opportunities in employment, training and promotion for women and minorities.

It is hereby further provided that if Respondent has not consented to the terms of this proposal within 20 days of the date of service of said Findings, Conclusions and Recommendations upon Respondent then the Director shall forward the file and these Findings, Conclusions and Recommendations to the Prosecuting Attorney for Twin Falls County with a request that an action be brought against Respondent in District Court pursuant to *Idaho Code* 67-5906(5) and 67-5911.

And it further provided that should the Twin Falls County Prosecuting Attorney neglect or refuse to bring such action then the Commission shall request that the Attorney General proceed as provided in *Idaho Code* 67-5906(5).

ceeding "in which the legal rights, duties, or privileges of a party are required by law to be determined by an agency after an opportunity for hearing." I.C. § 67–5201(2). At the time of the hearing in question the Rules and Regulations of the Idaho Commission on Human Rights, Article IV—4.1, provided as follows:

> Any hearing or any proceeding thereon or related thereto, shall not be deemed a "contested case" within the meaning of section 67–5201(2), Idaho Code, because neither the Commission, nor any investigator designated by the Commission, shall determine the legal rights, duties, or privileges of a party. Any determination by the Commission, advisory committee, or a report of an investigator shall constitute no more than findings and recommendations, or either of them.

The decision of the district court denominating the hearing before the Commission to be a "contested case" is, therefore, contrary to the regulations of the Commission in effect at the time. The regulation is consistent with I.C. § 67–5906, the statute delineating the powers and duties of the Commission. At the times relevant to this case, I.C. § 67–5906 did not confer upon the Commission the power to enter orders. A 1976 amendment extended the power of the Commission, but that amendment is not applicable in this case.

The decision of the district court was founded on the premise that the Department of Employment was required to Appeal the Findings and Recommendations of the Commission on Human Rights, this premise being based upon the conclusion that the hearing before the Commission was a "contested case." The initial conclusion that the hearing was a "contested case" is in error. As a consequence, the premise that the Department of Employment was required to appeal the Findings and Recommendations is also in error. Judicial review under the Administrative Procedure Act is limited to "contested cases." I.C. § 67–5215. Therefore, the Department had no right to judicial review of the Commission's Findings and Recommendations and was, as a consequence, not required or entitled to appeal the Findings and Recommendations. Summary judgment based upon the Commission's Findings and Recommendations is in error. Those Findings and Recommendations have no binding effect.

Based upon the foregoing analysis, it appears that the district court erred in granting summary judgment in favor of the respondent and the judgment of the district court is, therefore, reversed.

McFADDEN, BAKES and BISTLINE, JJ., and COGSWELL, J., Pro Tem., concur.