73 P.3d 721

**WESTWAY CONSTRUCTION, INC., Plaintiff–Appellant,**

v.

**IDAHO TRANSPORTATION DEPARTMENT, Defendant–Respondent.**

Idaho Transportation Department, Third–Party Plaintiff–Respondent,

v.

**United States Fidelity and Guaranty Company, Third–Party Defendant–Appellant.**

Nos. 28464, 28484.

Supreme Court of Idaho, Boise, May 2003 Term.

July 11, 2003.

Dunn & Black, P.S., Spokane, for appellant Westway Construction, Inc. Richard D. Campbell argued.

Cosho, Humphrey, Greener & Welsh, Boise, and Stewart Sokol & Gray, LLC, Portland, Oregon, for appellant United States Fidelity and Guaranty Company. Jan D. Sokol argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent Idaho Transportation Department. Steven M. Parry argued.

EISMANN, Justice.

This is an appeal from a judgment upholding the forfeiture of a bid bond submitted by a bidder on a public works contract and holding the surety liable for the face amount of the bond. We vacate the judgment because the parties did not exhaust their administrative remedies.

## I. FACTS AND PROCEDURAL HISTORY

On May 10, 2000, the Idaho Transportation Department (ITD) advertised for bids for a federal-aid highway project to be constructed in Bonner County, Idaho. The time for opening the bids was scheduled for 2:00 p.m. on June 8, 2000. During the morning of June 8, 2000, Westway Construction, Inc. (Westway) submitted a bid, which was accompanied by a bid bond[1] that had been issued by United States Fidelity and Guaranty Company (USF & G). Prior to submitting its bid, Westway had received bids from two asphalt subcontractors, namely, Interstate Concrete & Asphalt Co. (Interstate) and Acme Materials & Construction Co. (Acme). It based its bid calculations upon the bid it had received from Interstate because its total bid was lower than Acme's total bid.

After Westway had submitted its bid, Interstate faxed it a revised subcontractor bid, changing the prices on several items in its bid. One of the items entitled "Plant Mix Pavement Class I" was increased from $690,750.00 in Interstate's original bid to $825,750.00 in its revised bid. That same item in the Acme bid was listed as $684,000.00. Westway contends that it then prepared a revised, lower bid using some figures from the Interstate bid and some from the Acme bid. Westway submitted its revised bid prior to the bid opening, and it was the low bid.

On June 9, 2000, Westway sent the ITD a letter asking to withdraw its revised bid based upon a mistake. It contends that it had misread Acme's bid for the plant mix pavement. Acme had listed the bid item as

"Plant Mix Pavement Class I (plus rock)." Acme intended the words "plus rock" to mean that the mineral aggregate (rock) was excluded from the bid. Obtaining the necessary mineral aggregate would cost Westway approximately $210,150.00.

On June 14, 2000, the ITD responded by letter advising Westway that "there appears to be no question that a mistake was made and therefore withdrawal of the bid is allowed." The letter added, however, "Your letter and attachments will be turned over to our legal staff for a determination as to relief from bond forfeitures." On August 14, 2000, the ITD's counsel sent Westway a letter stating that Idaho Code § 54–1904C only permitted return of the bid security if the bidder made a clerical or mathematical mistake; that Westway's mistake cannot be classified as a clerical mistake because it was a judgmental error; and that if Westway paid $538,240.95 within thirty days, its bid bond would be returned.

On September 14, 2000, a roadway design engineer for the ITD sent a letter entitled "Final Report" which was written "to document the facts concerning problems with the bid of Westway Construction, Inc. and the existence of each element required in Idaho code 54–1904C in order to qualify for relief from bids allowed by Idaho code 54–1904B." After reciting various facts, he stated, "We therefore have not been provided enough information to determine that a clerical mistake was made." He concluded, "The Idaho Transportation Department finds that all elements have not been met for relief from forfeiture of bond per Idaho code 54–1904C."

On December 4, 2000, Westway filed this action against the ITD seeking a declaratory judgment that it had made a clerical mistake in its bid and was therefore entitled to the return of its bid bond. The ITD answered and then filed a third-party complaint against USF & G seeking a judgment in the sum of $538,241.32, the face amount of the bid bond. Westway and USF & G both moved for summary judgment, and after oral argument the district court issued a memorandum deci-

---

1. Idaho Code § 40–902(2) requires that a bid submitted for work on the state highway system must be accompanied by a cashier's check, certi- fied check, or bidder's bond for the sum of 5% of the amount of the bid.

sion denying both motions. The district court found that the ITD had not abused its discretion in determining that Westway was not entitled to relief from the forfeiture of its bid bond. The district court then entered judgment declaring the bid bond forfeited and awarding the ITD damages against USF & G in the sum of $538,241.32. Both Westway and USF & G timely appealed.

After oral argument, this Court asked the parties to submit additional briefing on two issues: (1) Whether or not the Idaho Administrative Procedures Act (APA) applies to this case; and (2) If it does, whether or not a final order has been issued under the APA. Both Westway and the ITD submitted post-argument briefs.

## II. ANALYSIS

### A. Does the APA Govern the Determination of Whether Westway Is Entitled to Relief from Its Bid and the Return of Its Bid Security?

■ Idaho Code § 54–1904B provides that a public works contractor, who has submitted a bid to a public entity in competitive bidding for the construction, alteration, repair, or improvement of public works construction, may obtain relief from the bid because of a mistake. A bidder who claims a mistake in the bid submitted is entitled to relief from the bid and the return of any bid security if the bidder satisfies all of the conditions of Idaho Code § 54–1904C. IDAHO CODE § 54–1904B(b) (2000). If the bidder does not satisfy those conditions, then the bid security is forfeited. *Id.* Idaho Code § 54–1904C provides as follows:

The bidder shall establish to the satisfaction of the public entity that:

(a) A clerical or mathematical mistake was made;

(b) The bidder gave the public entity written notice within five (5) calendar days after the opening of the bids of the mistake, specifying in the notice in detail how the mistake occurred; and

(c) The mistake was material.

Because the doctrine of exhaustion of administrative remedies generally requires that a case run the full gamut of administrative proceedings before an application for judicial review may be considered, *McVicker v. City of Lewiston*, 134 Idaho 34, 37, 995 P.2d 804, 807 (2000), we must decide whether the APA governs the determination of whether a bidder has satisfied the conditions set forth in Idaho Code § 54–1904C.

■ The APA governs that determination if it is a "contested case," which is defined as a "proceeding by an agency, other than the public utilities commission or the industrial commission, that may result in the issuance of an order." IDAHO CODE § 67–5240 (2001). To be a contested case, the proceeding must be by an "agency," which Idaho Code § 67–5201(2) defines as follows:

"Agency" means each state board, commission, department or officer authorized by law to make rules or to determine contested cases, but does not include the legislative or judicial branches, executive officers listed in section 1, article IV, of the constitution of the state of Idaho in the exercise of powers derived directly and exclusively from the constitution, the state militia or the state board of correction.

The ITD is an agency within that definition. It is an executive department of state government. IDAHO CODE § 40–501 (2002).

■ To be a contested case, the proceeding must be one that may result in the issuance of an "order." Idaho Code § 67–5201(12) defines an order as "an agency action of particular applicability that determines the legal rights, duties, privileges, immunities, or other legal interests of one (1) or more specific persons." The ITD's determination of whether Westway has satisfied the conditions set forth in Idaho Code § 54–1904C would be an agency action [2] "of particular applicability." It would apply only to Westway and USF & G.

■ Finally, to be a contested case the decision by the ITD as to whether Westway

---

**2.** Insofar as is relevant here, "agency action" is defined as "the whole or part of . . . [an] order."

IDAHO CODE § 67–5201(3) (2001).

is entitled to the return of its bid security must "determine the legal rights, duties, privileges, immunities or other legal interests" of specific persons.[3] IDAHO CODE § 67–5240 (2001). Whether or not that decision determines legal rights, duties, privileges, immunities or other legal interests requires a two-step analysis.

■■■ First, has the legislature granted the agency the authority to determine the particular issue? If an agency does not have the authority to resolve a particular issue, then the agency cannot determine a party's legal rights, duties, privileges, immunities, or other legal interests regarding that issue. *Hoppe v. Nichols*, 100 Idaho 133, 594 P.2d 643 (1979). Thus, the first step in the analysis is to decide whether the legislature has granted the ITD the authority to determine whether Westway satisfied the conditions in Idaho Code § 54 1904C. The applicable statutes are as follows:

Idaho Code § 54–1904B:

> (a) If an awarding authority for the public entity determines that a bidder is entitled to relief from a bid because of a mistake, the authority shall prepare a report in writing to document the facts establishing the existence of each element required in section 54–1904C, Idaho Code. The report shall be available for inspection as a public record and shall be filed with the public entity soliciting bids.

> (b) A bidder claiming a mistake satisfying all the conditions of section 54–1904C, Idaho Code, shall be entitled to relief from the bid and have any bid security returned by the public entity. Bidders not satisfying the conditions found in section 54–1904C, Idaho Code, shall forfeit any bid security. Bidders failing to execute a contract and not satisfying the conditions of a mistake shall also forfeit any bid security.

Idaho Code § 54–1904C:

> The bidder shall establish to the satisfaction of the public entity that:

> (a) A clerical or mathematical mistake was made;

> (b) The bidder gave the public entity written notice within five (5) calendar days after the opening of the bids of the mistake, specifying in the notice in detail how the mistake occurred; and

> (c) The mistake was material.

Idaho Code § 54–1904C provides that the bidder "shall establish to the satisfaction of the public entity" the three listed conditions in order to obtain relief from a bid and return of the bid security. The ITD is within the definition of "public entity," IDAHO CODE § 54–1901(i) (2000), and is *the* public entity because it advertised for the bids in this case. Idaho Code § 54–1904B(a) provides that if the awarding authority for the public entity "determines that a bidder is entitled to relief from a bid because of a mistake," it shall prepare a written report of its findings to be kept as a public record. Idaho Code § 54–1904B(b) provides, "Bidders not satisfying the conditions found in section 54–1904C, Idaho Code, shall forfeit any bid security." The applicable statutes authorize the public entity, which in this case is the ITD, to make the determination of whether or not the bidder is entitled to relief because of a mistake.

■■■ Second, does the agency decision on the issue determine "the legal rights, duties, privileges, immunities, or other legal interests" of one or more persons? Not all decisions of particular applicability by an agency determine a person's legal rights, duties, privileges, immunities, or other legal interests. *Maresh v. State, Dept. of Health and Welfare*, 132 Idaho 221, 970 P.2d 14 (1998). In this case, the ITD's decision to forfeit the $538,241.32 bid bond issued by USF & G and submitted by Westway with its bid certainly determined their legal rights, duties, or other legal interests.

■■ Thus, the ITD's determination of whether Westway was entitled to relief from its bid and the return of its bid security because of a mistake would be a contested case governed by the APA unless it was

---

**3.** A "person" is defined as "any individual, partnership, corporation, association, governmental subdivision or agency, or public or private organization or entity of any character." IDAHO CODE § 67–5201(15) (2001). Both Westway and USF & G are persons under that definition.

exempted by some other provision of law. None of the parties have pointed to any provision of law that would exempt this determination from the APA.[4] Therefore, the APA governs the ITD's determination regarding Westway's bid bond.

The ITD contends that its determination of whether or not a bidder is entitled to relief from a bid because of a mistake is not a contested case under the APA unless there is a statute expressly authorizing it to hold a hearing on the issue. It argues, "Simply put, without enabling legislation allowing ITD to hold a contested case hearing on a particular matter (e.g., forfeiture of a bid bond) it lacks the authority to do so and, if there is a justiciable controversy, it must be decided in the District Court by way of an original action." The ITD cites three cases in support of that argument.

The first case is *Fox v. Board of County Commissioners, Boundary County,* 114 Idaho 940, 763 P.2d 313 (Ct.App.1988), in which a landowner sought judicial review of the county commissioners' decision to renew the beer licenses for two taverns adjoining his farm. Because a county board of commissioners does not fall within the definition of an "agency," *Petersen v. Franklin County,* 130 Idaho 176, 938 P.2d 1214 (1997), its proceedings are not governed by the APA unless there is another statute expressly making all or a part of the APA applicable. *Gibson v. Ada County Sheriff's Dep't,* No. 27605 139 Idaho 5, 72 P.3d 845 (May 28, 2003). Idaho Code § 23–1015(3) expressly provided that an applicant who was denied a license renewal could seek judicial review under §§ 67–5215 and 67–5216 of the APA, and in *Fox* the landowner argued that he too should be entitled to judicial review under the APA. The Court of Appeals rejected Fox's argument because there was no statute authorizing him to seek judicial review under the APA. *Fox* has no application in this case because the ITD is included in the definition of "agency" under the APA.

The second case is *Hoppe v. Nichols,* 100 Idaho 133, 594 P.2d 643 (1979). In *Hoppe,* we held that a proceeding before the Commission on Human Rights was not a contested case because at the time of the proceeding the Commission was not empowered to determine a party's legal rights, duties, or privileges. The applicable statute and the Commission rule only provided that the Commission's findings constituted recommendations. As addressed above, however, in this case, the applicable statutes authorize the ITD to make the determination of whether or not the bidder is entitled to relief because of a mistake. Therefore, the *Hoppe* case has no application.

The third case is *Idaho Historic Preservation Council, Inc. v. City Council,* 134 Idaho 651, 8 P.3d 646 (2000). In that case, we held that because a city council is not an "agency" as defined in the APA, the APA would not apply to actions of a city council in the absence of a statute making it applicable. Like the *Fox* case, the *Idaho Historic Preservation Council* case has no application here because the ITD is an "agency" as the APA defines that term.

In support of its argument, the ITD also quotes various passages from a 1993 law review article by Michael S. Gilmore and Dale D. Goble entitled, "The Idaho Administration Procedure's Act: A Primer for the Practitioner." The portion of that article that actually addresses what is a contested case is contrary to the ITD's position, however. As stated by Messrs. Gilmore and Goble:

Section 67–5240 provides that all proceedings by an agency—other than the Public Utilities Commission or the Industrial Commission—that may result in the issuance of an "order" are governed by the contested case provisions of the APA unless otherwise provided by law. The section resolves several ambiguities present in the former APA.

First, the section makes it clear that any proceeding that may result in the issuance

---

4. If the awarding authority for the public entity determines that the bidder is entitled to relief from a bid because of mistake, the authority is required by Idaho Code § 54–1904B(a) to prepare a written report documenting the facts es-

tablishing the existence of each element required by Idaho Code § 54–1904C and to make that report available for public inspection. That statute does not purport to exempt the determination from the APA, however.

of an "order" is a contested case. "Order" is defined by the Act as an "agency action of particular applicability that determines the legal rights, duties, privileges, immunities, or other legal interests of one (1) or more specific persons." Thus, it is the legal effect of the decision—whether it affects an enumerated interest—that determines whether the agency must conduct a contested case, not whether the legislature has provided by statute for a hearing.

Michael S. Gilmore & Dale D. Goble, The Idaho Administration Procedure's Act: A Primer for the Practitioner, 30 Idaho L.Rev. 273, 313 (1993).

 Westway argues that there are policy reasons why we should hold that the APA does not govern the determination of whether a bidder satisfies the conditions listed in Idaho Code § 54–1904C to obtain relief from a bid and the return of its bid security. If a statute is ambiguous, we will certainly consider the public policy behind the statute in order to determine the legislature's intent. *Lopez v. State, Indus. Special Indem. Fund*, 136 Idaho 174, 30 P.3d 952 (2001); *Adamson v. Blanchard*, 133 Idaho 602, 990 P.2d 1213 (1999). We only do so, however, if the statute is ambiguous. If an unambiguous statute is unsound for any reason, the power to correct it is legislative, not judicial. *Hansen v. State Farm Mut. Auto. Ins. Co.*, 112 Idaho 663, 735 P.2d 974 (1987). In this case, the applicable statutes are not ambiguous. Therefore, we need not address the policy arguments made by Westway. We have no authority to decide, based upon public policy, that certain issues should not be resolved under the APA. That is the legislature's responsibility.

**B. Has a Final Order Been Issued under the APA?**

 The next question is whether a final order was issued by the ITD. It does not argue that it has issued an order that would be final under the APA. The two documents in the record that could arguably constitute a

final order are the August 14, 2000 letter written by the ITD's counsel and the September 14, 2000 letter entitled "Final Report" written by a roadway design engineer. Because neither of those persons was the "agency head" (the Idaho Transportation Board [5]), they could only issue either a recommended order or a preliminary order. IDAHO CODE § 67–5243(1) (2001). A recommended order becomes final only after review by the agency head in accordance with Idaho Code § 67–5244. *Id.* There is no contention that the Idaho Transportation Board reviewed either of these letters. Therefore, neither letter was a recommended order that became final upon review by the agency head. A preliminary order can become final without review by the agency head, *Id.*, but it must include "a statement that the order will become a final order without further notice" and "the actions necessary to obtain administrative review of the preliminary order." IDAHO CODE § 67–5245(1) (2001). Neither of the letters contained those required statements. Therefore, they were not preliminary orders. Thus, no final order has been issued, nor does the record indicate that the ITD even complied with the hearing requirements in the APA.

 Westway argues that if the APA applies in this case, it was entitled to an administrative hearing before the ITD awarded the contract to the second lowest bidder. It contends that if it failed to establish grounds for relief under Idaho Code § 54 1904C, it was still entitled to proceed on its bid. Nothing in the statutes governing relief from bids so requires. Idaho Code § 54–1904B(b) provides, "Bidders not satisfying the conditions found in section 54–1904C, Idaho Code, shall forfeit any bid security." A bidder who claims a mistake, but fails to satisfy the conditions found in Idaho Code § 54–1904C, forfeits any bid security. Obviously, the legislature did not intend that a bidder not satisfying the conditions of section 54–1904C could still decide to perform under the bid

---

5. The "agency head" is "an individual or body of individuals in whom the ultimate legal authority of the agency is vested by any provision of law." IDAHO CODE § 67–5201(4) (2001). The ulti-mate legal authority of the ITD is the Idaho Transportation Board. IDAHO CODE § 40–501 (2002).

submitted. There would be no reason to forfeit the bid security of a bidder that honored its bid. Idaho Code § 54–1904D provides, "A bidder who claims a mistake ... shall be prohibited from participating in any rebidding of that project on which the mistake was claimed." This statute applies to a bidder who "claims a mistake," not merely those who establish a mistake under § 54–1904C. In this case, Westway requested that its bid be withdrawn because of a mistake, and the ITD granted that request. If Westway failed to prove that it was entitled to relief under Idaho Code § 54–1904C, then under Idaho Code § 54–1904B(b) it would forfeit its bid security and under Idaho Code § 54–1904D it would be precluded from resubmitting its bid. If Westway prevailed, it would be entitled to relief from the bid and the return of its bid security. IDAHO CODE § 54–1904B(b) (2000). In either event, there would be no reason to delay awarding the contract to await the determination of whether Westway could satisfy the conditions of Idaho Code § 54–1904C.

Because the parties have not exhausted their administrative remedies, the judgment of the district court must be vacated. *McVicker v. City of Lewiston,* 134 Idaho 34, 37, 995 P.2d 804, 807 (2000). Actions for declaratory judgment, or to recover damages, are not a substitute for statutory administrative procedure, and such administrative remedies must be exhausted before seeking judicial review. *Carter v. State, Dept. of Health & Welfare,* 103 Idaho 701, 652 P.2d 649 (1982). Therefore, on remand this case must be dismissed without prejudice.

## C. Legal Issues that Will Arise in Further Administrative Proceedings.

There are two legal issues briefed and argued by the parties that we will address because they will arise in connection with any further administrative proceedings and could then be the basis of a future appeal in this case. First, relying upon Idaho Code § 40–902(2), Westway argues that its bid bond cannot be forfeited because the ITD never offered it the contract. That statute provides:

(2) Each bid must be accompanied by a cashier's check or a certified check in favor of the department on some bank in the state of Idaho, or by a bidder's bond, for the sum of five per cent (5%) of the amount of the bid, to be forfeited if the bidder, upon acceptance of his bid, fails or refuses to enter into a contract within fifteen (15) days after the presentation of the contract by the department to him for execution and to furnish the required bond. Checks and bonds of unsuccessful bidders shall be returned immediately after the contract is awarded.

This statute, enacted in 1985, creates the requirement of bid security in the sum of 5% of the bid and provides for the forfeiture of that security if the bidder "upon acceptance of his bid, fails or refuses to enter into a contract within fifteen (15) days after the presentation of the contract by the department to him for execution and to furnish the required bond." In 1991, the legislature enacted Idaho Code §§ 54–1904B, 54–1904C, 54–1904D, and 54–1904E to provide a means for obtaining relief from a bid due to a mistake. Ch. 282, § 2, 1991 Idaho Sess. Laws 726, 728–29. Where two statutes appear to apply to the same case or subject matter, the specific statute will control over the more general statute. *Gooding County v. Wybenga,* 137 Idaho 201, 46 P.3d 18 (2002). The statutes enacted in 1991 specifically apply to the situation in which a bidder seeks relief from a bid and the return of bid security based upon an alleged mistake. Idaho Code § 40–902(2) does not purport to cover that situation. Therefore, § 40–902(2) has no application to this case.

The second legal issue is the meaning of "clerical mistake" in Idaho Code § 54–1904C. We would not address the issue at this time if the ITD's interpretation of the Idaho Code § 54–1904C were entitled to deference. In determining whether an agency interpretation of a statute is entitled to deference, we have adopted a four-prong test, the first of which is whether the agency has been entrusted with the responsibility to administer the statute at issue. *J.R. Simplot Co., Inc. v. Idaho State Tax Comm'n,* 120 Idaho 849, 862, 820 P.2d 1206, 1219 (1991).

**116**

Here, the ITD has not been entrusted by the legislature with the responsibility to administer Idaho Code § 54–1904C. That statute applies generally to any public entity receiving bids for public works construction, not just to bids submitted to the ITD. Therefore, any interpretation by the ITD of the statute would not be entitled to deference.

In *Boise Junior College District v. Mattefs Construction Co.*, 92 Idaho 757, 761–62, 450 P.2d 604, 608–09 (1969), we first addressed what constitutes a clerical mistake in a bid, quoting from *M.F. Kemper Construction Co. v. City of Los Angeles*, 37 Cal.2d 696, 235 P.2d 7, 9 (1951) (citations omitted), as follows:

> There is a difference between mere mechanical or clerical errors made in tabulating or transcribing figures and errors of judgment, as, for example, underestimating the cost of labor or materials. The distinction between the two types of error is recognized in the cases allowing rescission and in the procedures provided by the state and federal governments for relieving contractors from mistakes in bids on public work. Generally, relief is refused for error in judgment and allowed only for clerical or mathematical mistakes. Where a person is denied relief because of an error in judgment, the agreement which is enforced is the one he intended to make, whereas if he is denied relief from a clerical error, he is forced to perform an agreement he had no intention of making. The statement in the bid form in the present case can be given effect by interpreting it as relating to errors of judgment as distinguished from clerical mistakes.

In the *Mattefs* case, the person compiling the bid failed to insert the amount of a subcontractor's bid for one item in the construction project, apparently because he was interrupted while compiling the bid. The company owner then reviewed the bid and failed to catch the omission. This Court held that the mistake in the *Mattefs* case was a clerical mistake.

In *Mattefs* we distinguished between an error in judgment on one hand and a clerical or mathematical mistake on the other. The example given for a mistake in

judgment was an error in underestimating the cost of labor or materials. The example given for a clerical mistake was an error made in tabulating or transcribing figures. We see no difference between an error in tabulating or transcribing figures and an error in interpreting the wording used in a subcontractor's bid, as is alleged in this case. For example, an error in transcribing figures could result from either misreading the figures or miswriting them. They would both be clerical errors. An error in misreading figures is a clerical error even if it results from misinterpreting what was written. In the dichotomy between errors in judgment on the one hand and clerical or mathematical mistakes on the other, misinterpreting someone's handwriting, or in this case the meaning intended by the words "plus rock," is not an error in judgment. If, as contended by Westway, it made a mistake in its revised bid because it misinterpreted the meaning of "plus rock" in a subcontractor's bid, such mistake would be a "clerical mistake." We express no opinion as to whether or not Westway actually made a mistake and, if so, the nature of that mistake. Those are issues to be resolved in administrative proceedings.

**D. Is Westway Entitled to an Award of Attorney Fees on Appeal?**

Westway requests an award of attorney fees on appeal pursuant to Idaho Code § 12–120(3), which provides: "In any civil action to recover … in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs." That statute is not applicable. "I.C. § 12–117 provides the exclusive basis upon which to seek an award of attorney fees against a state agency." *State v. Hagerman Water Right Owners, Inc.*, 130 Idaho 718, 723, 947 P.2d 391, 396 (1997). Westway has not requested attorney fees under Idaho Code § 12–117, and therefore we need not address whether the requirements of that statute have been met.

**III. CONCLUSION**

The judgment of the district court is vacated and this case is remanded with directions

to dismiss it without prejudice. We do not award attorney fees on appeal, and considering the result and the positions of the parties on appeal we do not award costs on appeal.

Chief Justice TROUT, and Justices SCHROEDER, WALTERS and KIDWELL concur.